Case number document 2-16-0900. In re Estate of Wallace E. Williams, Wallace 24th petitioner of crime in the Butterfield Country Club, on the holding, arguing on behalf of the petitioner of crime, Mr. Daniel T. Smart, arguing on behalf of the respondent of the community, Mr. Anthony J. Briggs, of Op-Edge. Good morning, counsel. I apologize. I do not know either one of you by sight, so I'm going to do this big. Counsel Smart, you may proceed. Good morning, and may it please the Court. We're here today seeking a reversal of the circuit court's dismissal of the defendant in which the circuit court found that there was no duty owed by the defendant in the placement, control, provision, and use of AED devices in which they already possessed. Well, in fact, he said a little bit more than that. He said he could not envision a set of facts that would create that duty. Isn't that what he ultimately said? Under the basis of the Salte decision in reliance in the Lundy case, that is, in essence, what the court found. And in doing so, the court went through the analysis that was let on by this court in the Salte case and relied on Lundy. In doing so, the difference that we had that's a very important distinction in this case is that in the Salte case, the YMCA did not possess an AED device. And this court went through the analysis under 314A to determine what is reasonably required under the circumstances in the form of rendering aid. And this court ultimately came to the conclusion that there was no duty to possess and to use the AED device. Now, I would argue that you can't use something that you don't have. In this case, we have an AED device that was possessed by the defendant. In Salte, I don't mean to interrupt you, but in Salte, that decision was before the AED Act, correct? Was that in 2004? Yes, it was. And the act went into effect January of 2005? Correct. So the facility was not required to have the device? Right, there was no requirement under that, and I believe that- But now there would be, correct? Well, there's a requirement to an extent for certain facilities to have it. I'm not saying that that specifically applies to the defendant. In this case, they in fact had the AED devices. And under the traditional duty analysis, the argument is, short of actually using the device, there needs to be a proper placement and availability of the device. In this case, the device not being available, being locked somewhere where no one has access to, that in and of itself renders the ability to use a device that they possess meaningless. What about education in using the device? The judge seemed to think it might be- Well, some of the cases seem to think it's more difficult. What about that position, having a plan to use it? Well, I think it was discussed in the briefs as far as the AED Act and the training, maintenance, and oversight that has been determined by our legislature. But I think it needs to almost be parted two different ways, in the sense that if you have an AED device and it's not available, not only does that mean that the defendant employees cannot utilize it, but that also means that any bystander, first responder, is unable to utilize it. And so as far as the training is concerned, that goes more towards the defendant employees as opposed to a first responder who wouldn't have the ability to access that device. And that ultimately would go, it raises an issue of fact, that would go to proximate cause. Had there been this device accessible, which in this case it was not, then we know that in sudden cardiac arrest circumstances, every minute counts. The chance of survival decreases 7 to 10% every minute. And so had the device not been locked away, that they already possessed, then there could have been somebody that was playing paddle tennis with the decedent, or somebody that came to his aid would have been able to access that AED device. But the fact that that wasn't even accessible, that in essence goes to, we've pled it, it goes to proximate cause. Now in terms of the training, that's something that we've pled, that they failed to have the properly trained individuals. And under the AED Act, that is something that they're required to have. They're required to have trained users of those devices. In your actual complaint though, did you identify the acts and say under the act this is required, or did you just make the basic arguments, or the basic allegations? We made the allegations that the defendants had agents and or employees that were trained in the use, placement, provision, and control of those devices, and then subsequently failed to make the devices accessible, failed to have the proper trained individuals. So from a pleading perspective, which is what we're here for after a 615 motion to dismiss, we have those allegations within the complaint. Now, moving forward, once we get into discovery, we'll be able to come to the conclusion, okay, what was the training that was or was not in place? Who was available that had that training, that requisite training, as required under the act, and then potentially under, if they had any specific policies, procedures? Would you agree with reference, and I understand what you're saying, you're going to the statute now, but with reference to availability, this is a golf course. Strenuous activity could occur, and somebody could get a heart attack, like Bing Crosby dying on the 18th hole, could happen anywhere on a golf course. What does that mean in terms of the consequences of placing a burden on the defendant? Well, I think it's very fact specific in the sense that we know that the device wasn't accessible. Now, if there's a circumstance where you're furthest point away from the clubhouse, there are no AED devices on the golf course, but there might be one in the clubhouse, then that's a different fact pattern. We know that they have them there. We can call into the pro shop and say, Mr. Smith is having a heart attack out on the ninth hole. We need somebody out here to assist him. Then they would be able to take that AED device that's in the pro shop and run it out there. But if it's locked in a security hut that nobody can get into, then there lies the issue that it's not accessible. So it's great that you have it, and I know that that is something that across the country has been advocated for, these AED devices and their use, and the timely use of defibrillation in somebody suffering from sudden cardiac arrest. But if you can't access it, if you're not going to take responsibility that comes with owning the device, which is what we're arguing, then you've breached your duty. So is the act, and I think all 50 states have a Good Samaritan provision as well, correct? Correct. So that only Wilfrin-Wanton's comment can lead to liability if there's compliance with the act. Well, that's the whole thing. If there is compliance with the act, and based off of our arguments, there isn't the maintenance and oversight as we've pled. They failed to do that, and they failed to have the training. So they're, in and of itself, amongst other reasons why it might not necessarily apply to the defendant, but they haven't complied with the act that would entitle them to any sort of civil immunity under the AED Act. So what, if any, relationship does the act, and then I believe the subsequent act about physical fitness, Facility Medical Emergency Preparedness Act, have to do with the 615 dismissal with prejudice? Well, I think, if anything, we have not cited to those specific acts within our complaint. But if anything, the substance and form of our allegations, in essence, state what the act is saying. And that's in terms of the training, the placement, the maintenance, the oversight. And we cite to those in terms of they failed to make it accessible, failed to make it available, and failed to, in essence, then render aid to the defendant of a device in which they had in their possession. One of the country club's arguments in the briefs is that, and I, and before Judge Popejoy, was also, look, we don't, you know, we don't have any doctors on staff who, or a PA on staff, a physician's assistant, who could recognize this is a heart attack. It could just be indigestion. And if we use an AED, are we going to do damage? What's, how would you address that? So, one thing that is, again, goes back to the formation of AED devices is that they are very user friendly in the sense that, although the act requires a trained user, the, an AED device, in essence, walks you through. There's voice prompts, there's text prompts on an AED device as far as the AED device on a person that has a normally functioning heart. It would not, it would not go off. It wouldn't shock the individual. It's not, you know, back in the day where you rub the panels together and, and clear and, and, and you shock the individual. So it's, it's very user friendly because it's, you know, it's been developed in that way so that almost anybody can use a device, but again, just like any sort of, of medical device, it's important to have trained individuals, but they've created them in a way that society can use them without that training because they know the importance and significance of timely treating sudden cardiac arrest. So essentially, I want to make sure I have your argument because I think we might have gone a bit beyond what's actually in front of us, but your request is, or you're asking us to find if there was an abuse of discretion in entering AED with prejudice dismissal, correct? Correct. In the sense that there, that the defendant owes no duty and, and the duty is, it's kind of twofold. It's the proper placement and use and control and provision of, but then also you have that duty and then the duty that's under 314A of what is required as the reasonableness of AED by a premises owner. And in terms of 314A is concerned, we have determined or we've argued that given the business invitee relationship that existed that was mentioned similar to Salte in the sense that there's somebody that has a membership with a And so therefore 314A does apply and then you go through the analysis similar to what the court did, this very court did in Salte and you come to the conclusion and it's, it's stated there, there was no duty to have an AED device and that's been similar across the country. There's no, there's no duty to actually have it. But what we haven't heard is, okay, what about when somebody has an AED device? What's the required aid that is to be, that they're reasonably capable of rendering? And in this case, you, you possess an AED device. What is required? You're, it's reasonably, it's reasonable that the defendant would be capable of rendering that type of aid to the decedent. And, and the defendant cites Vertigo versus Target Corporation. And in that case, under the common law, you have a reasonable, you have to take reasonable action to protect or aid patrons who sustained an injury or suffer illness, given what's on the premises. That's your argument? Given what's on the premises, they had a duty to take reasonable steps. And by, I guess, by on the premises in Vertigo, there was no AED device. So. That was a target score. Right. And so that's why a lot of the cases that were cited in defendant's brief, all go to the, are all cases where there was no AED device present. So you, in essence, are running to the same argument that this court had, had rendered, the opinion that this court had rendered and, and that's, you can't require them to have something that's, that they don't have and to use it and make available something that you don't have. However, when you have it, it has to be available. And that's kind of the essence of the Bartelli case that was cited in, in our briefs in, in the sense that if you have a preventative type equipment you have, you have the duty to make it available for its intended purpose. You can't have a fire extinguisher on your wall that doesn't work or you can't have a fire extinguisher box that's empty. Okay. That's, you're not fulfilling that duty to make it available to, to people to use it. The same goes for an AED device. You can't have an empty AED box. Okay. If you're in a courthouse and you see that there's an AED box there and someone's suffering from psychic cardiac arrest and you go run over there and there's no AED device, well then there lies the issue with not having the proper placement, not having the proper control, not having the proper provision of the AED device that they already possess. Does your complaint, as it was written and considered by Judge Polkjoy, even indicate that Butterfield Country Club is one of the facilities that should have one to encourage life-saving or are you not even worried about that? You're simply saying because they have one, there were responsibilities. Exactly. It's, it's not the sense of should they have had one under any sort of legislation or common law, but the fact that they did in fact possess one, that, that renders moot a lot of the case law that has been cited by the defendant. Thank you. Mr. Spencer? You'll have an opportunity to fully reply, but I'll let you choose. Thank you, Your Honors. Thank you. Counsel, I will do my best. Mr. Ricciarobato. Thank you. Mr. Ricciarobato. He may proceed when you're ready. Mr. McCord. Mrs. Mark. Anthony Ricciarobato on behalf of the Butterfield Country Club. Good morning, everybody. If I can start, I would like to actually answer a couple of the questions that Justice Burkett and Justice Hutchinson had asked. was up here. And, Justice, you asked them whether or not the AED Act was in existence at the time that the Salte decision was decided by Justice Hutchinson. No. The Salte decision was decided by Justice Hutchinson in 2004. The AED Act became law in January of 2000. So the AED Act was actually passed four years before Salte, and that's 410 ILCS 4 forward slash 1. And he didn't mention it. I agree. And so, also, you asked how it's... I think I was confusing that with the physical fitness facility. Right. That was at the time. Yes, it was. So, and, Justice Hutchinson, with respect to the question that you asked Mr. Smart about what he was asking the court to review and whether or not he was asking the court to review whether Judge Polkjoy or whether the circuit court abused his discretion in dismissing the case with prejudice, Mr. Smart agreed or answered that in the affirmative. However, that's never been asked. It's not asked anywhere in this appeal. Nowhere in plaintiff's or in the appellant's brief do they argue abusive discretion. Those words, abusive discretion, are not listed in their section under the standard of review. Nowhere do they present any argument in their brief that Justice Polkjoy abused his discretion in dismissing the case with prejudice. The issue is waived. It's waived on appeal. It's never been made. Well, I know that we, because this is a 615, we can also look at a de novo. We're looking at a de novo as well. But, I mean, the underlying issue is what did the judge do wrong? And that would, so that was the reason for my question. And one of the reasons I asked is because I never saw those words. But that's kind of where, what did the judge do wrong? Yes. Abuse of discretion. So the review is de novo, but plaintiff or the appellant never argues abuse of discretion in any way. And I look at it in two ways. I look at it as the dismissal is a de novo review and with prejudice. When Your Honor asked whether the with prejudice part was an abuse of discretion, I felt I needed to address that. And also, I believe another issue that has been waived are anti-acts. Justice Pertest started asking questions about the acts, but nowhere will you see the acts cited to in their brief under statutes involved. You can look through the 23 page of the report of proceedings before Judge Polkjoy and nowhere does the word act appear anywhere in the report of proceedings. The plaintiff waived any issues or any cause of action based upon any statutory acts in the circuit court because the plaintiff never raised any of these acts or statutes in the circuit court. But the issue today is as we review this and review the additional statement by Judge Polkjoy that I can't see any circumstances, any statement of facts that would create a duty, don't we have an obligation to look as a de novo reviewer what's out there? And Judge Polkjoy gave Mr. Smart, asked Mr. Smart the question and Judge Polkjoy was focusing at that time on whether or not the plaintiff pled that Butterfield, its agents or employees had any knowledge. How did they know that the decedent suffered from sudden cardiac arrest? And Judge Polkjoy asked Mr. Smart that question in the report of proceedings and Mr. Smart himself said, quite frankly and honestly, I don't know. And that's in line with your inquiry, Your Honor, and that is with that answer saying that counsel for the plaintiff has no idea how it is that any employees or agents of Butterfield would have any knowledge that the decedent suffered from sudden cardiac arrest. If the plaintiff's counsel concedes that, then how can he plead truthfully how any employees or agents? Well, he doesn't have discovery yet. Well, under 2-615, under our Code of Civil Procedure, litigants, defendants are allowed to bring a motion to dismiss if the four corners of the complaint fail to assert a cause of action. The four corners of this complaint fail to assert any cognizable cause of action. They fail to simply allege that anyone from Butterfield even knew that the decedent was playing pad ball. Something as simple as that. There's nowhere in the complaint does it allege that Butterfield knew that the decedent was playing pad ball. Nowhere in the complaint does it allege that anyone from Butterfield knew that he collapsed. Nowhere in the complaint does it allege that. And then it just conclusively pleads that we knew that he suffered from sudden cardiac arrest. Well, how is it that if we didn't know he was there and we didn't know that he fell to the ground, how is it that we now conclusively know that he suffered from sudden cardiac arrest? So let's play devil's advocate. Yes, Your Honor. If, as Justice Hutchinson noted in our de novo review, look at the acts, does the Butterfield Country Club qualify as a physical fitness facility under the act? I read it a couple times from front to back, and I've concluded, I've reached different conclusions. I would say that a reading, an interpretation of it could suggest, could suggest that it could fall under. Partially. Underneath. Because of the facilities that they offer. Yes. However, like I said, it's our position that the act is not an issue in this appeal, because a plaintiff had ample opportunity to plead it in the court below and had ample opportunity to argue it and try and argue it in their brief, and they never once mentioned any statute or act anywhere in their brief. So I think you're basically answering a question before I've asked it, but so as I asked Mr. Smart, what, if any, part do these acts play in our de novo review? You are saying no. They play absolutely no part in our review of the lower court's judgment, because it's up to both parties to raise the issue before the court. His argument is that he has fled the gist or the content of the act. No. Well, he, I, that might be his argument, but he never. You don't believe that the complaint, when we look at it and analyze it, sustains it. Absolutely. I agree. He absolutely does not plead anything at all that would bring the case under the act. Even if you were to take the act and look at it separately, not in his pleading. So. But as a de novo reviewer of what we have in front of us and the fact that we know the acts are there, that I may have missed in 2004, at least one of them, we're not supposed to look at them? We're supposed to disregard them? They're irrelevant to the de novo review because the court decided, based upon the common law and its interpretation of section 314A of the restatement of torts, it's unfair to the circuit court now for us to look back and look at the complaint as pled and now say that, well, under the complaint as pled, there is an opportunity maybe for them to plead a cause of action under the statute. But it was incumbent upon the plaintiff to either plead the statute or say, Your Honor, I move to file yet another amended complaint and I want to incorporate the statute in it. How do we know it wasn't just a tactical decision made by the plaintiff not to plead the act and to keep and remain silent on it? Maybe they weren't quite sure whether they could plead that we violated the act because if you look at the sections of the act, there's an immunity for us. So maybe they felt that if we plead the act and the court interprets the act, then under the act, they're immune because they did these things. And so they never attempted to plead the act. They never filed a motion seeking to file a second amended complaint to plead the act. They never argued with Judge Popejoy asking to file a second amended complaint. Nowhere in the record below in the 23 pages in the report of proceedings does a plaintiff ever ask for leave to file a second amended complaint to state a cause of action based upon any statutory scheme. And nowhere in its brief does the plaintiff argue before this court that the lower court abused its discretion in not allowing them to file a second amended complaint trying to assert a cause of action based upon the statute. And so we should not engage in speculation as to whether or not the act would even apply? Well, I guess in dicta, the court can address it. If the court wants to address it, but I believe if the court were to address it, it would be in dicta and it doesn't bear upon whether or not a common law cause of action was asserted. We asserted our right under 2-615 to dismiss the lawsuit because it failed to assert a common law action. Judge Popejoy, in acting as the assigned judge, read the complaint and read the case law and read Justice Hutchinson's decision in the Salt Lake case and dismissed it. And I even argue that the only way that there would be a common law duty would be under 314A. But the Butterfield Country Club doesn't fall, the duty would not be imposed under 314A because the Butterfield Country Club, there's only four exceptions to the general non-duty rule. And the four exceptions under 314A are one, for a defendant that's a common carrier, two, that's a defendant who is an innkeeper, three, whether or not the defendant had custody of the injured party, or four, a special relationship. Counsel here is attempting to argue that it falls under the special relationship, but in order to assert a special relationship, you need to plead that the defendant held itself out to the public. Out to the public. They don't plead that. It's a private country club. They plead that we're a private country club. Nowhere in the complaint do they plead public. They never even use the word public. The public can purchase a membership, correct? No, but it's not pled. They say, they argue that it can be reasonable to assume that the public can do that, but they still plead private. Why can't we take the word private as being true in their complaint? We're required to take their allegations. Judge Polkjoy was required to take the words that the plaintiff chose to use in their complaint as being true. Judge Polkjoy and we here today need to take the word private as being pled as true. So why should we now go through all kinds of contortions to try and say that we are open to the public when it was their choice of words and not ours? Judge Polkjoy could have simply said, plaintiff's complaint does not state a cause of action. I dismiss the case. He went beyond that and basically said he can never or he can't find, and I'm paraphrasing, he can't find any statement of facts that would satisfy. Doesn't that open the door to a little bit more conversation about this? Yeah, well, I guess. And that's why we're here, I think. It could have if plaintiff chose to pursue that. The plaintiff never saw, the plaintiff never was denied a motion seeking leave to file a second amendment. There was never any attempt. There was never, you're right, Your Honor. And as the lawyers, you're in charge of your pleadings, and the trial court is just speculating at that point. Is that your argument? Well, that would be, I don't know if the court is speculating, but it was after we were there twice. We were there on a motion for judgment on the pleadings, and we have no record of proceedings on that. So because the burden of presenting the record of the report of proceedings is on the appellant, the appellant did not present this court with the report of proceedings from the first time we had our motion for judgment on the pleadings. So with that interpretation, the court has to infer that my argument is, without the report of proceedings to review from the first time it was up and the discussion held then, you have to infer that the lower court ruled correctly in saying that he could not see a fact pattern that would lead to a cogent cause of action. I think I found what he said. It's going to be granted with prejudice because I don't think there's anything else that you can do in your pleading to satisfy me, given how I'm interpreting Salty. And what if Salty isn't correct? Well, it is. Salty is. It was a well-written, well-written, based upon established law, and I think Salty controlled. But I think Salty is even assuming it. Salty even assumes that 314A applies because in Salty, the court applied 314A to the YMCA. Here, I don't believe that the Butterfield Country Club is even, even falls under any of the four exceptions. And the Bartoli case that the plaintiff cites to, may I just finish? Yes, you may. The Bartoli case that the plaintiff relies upon, the reverses, has absolutely nothing to do with this case. It has absolutely nothing to do with the person on the premises of a defendant. It has absolutely nothing to do with the interpretation of 314A. Counsel, their only argument on review is that there's a duty under Rule 314A, and they rely upon the Bartoli case, which doesn't even interpret Rule 3, Section 314A of the restatement, and subsection F of that requires that the defendant needed to have known or should have known that the decedent collapsed and needed care. Subsection F. There's nowhere, nowhere is it pledged that we factually knew that the decedent collapsed and fell, or that we even knew he was even on the premises. So I'm sorry for going over my time, Your Honors. Thank you. I actually have one other question, going back to Salte for a minute. You know, Salte held the defendant did not have a duty to have the defibrillator on premises and use it. But doesn't the analysis have to change once it's pled or determined that the defibrillator is on the premises? The analysis of what would be reasonable under the circumstances would have to be different. Thank you, Your Honor, for asking that question, because it's a topic that I wasn't able to address throughout the rest of my argument, and it goes to voluntary assumption of duty, because just because we have an AED, or just because we voluntarily assume to have an AED doesn't mean that we voluntarily assume to use it. And the easiest example I could come up with is in cases where you issue Rule 23 decisions all the time, ice and snow cases. There's no common law duty for people that fall on naturally accumulated snow, but almost every residential homeowner owns a snow shovel. Just because a residential homeowner owns a snow shovel, does that mean that they now voluntarily assume the duty to go out and remove all of the naturally accumulated snow? So in this case, let's look at the AED as a snow shovel. Just because we voluntarily assume to have the AED, it doesn't mean that we voluntarily assume to use it, because under our laws, the voluntarily assumed duty goes no further than the duty that was assumed. And if we assume, and counsel used the words that it was locked away in a storage box, that's not pled in the complaint. There's no allegations as to where it was. But let me argue that for sake of argument. If we voluntarily assume to have an AED and lock it in a lock box in an office somewhere among the hundreds of acres of the country club, then that's the only duty that we voluntarily assume to have. To have it there available if you get a call, someone needs it on the course, or whatever. The case law is exceptionally clear is that whatever voluntary duty we assume, it never goes beyond that. It doesn't go beyond that. If I have a snow shovel, I don't have a duty to remove naturally accumulated snow. If I have an AED locked in an office, I have no duty to use it. Same thing as a snow shovel. So thank you all very much. Have a good Memorial Day weekend. Thank you. Mr. Smart? Thank you, Your Honor. I will say one thing that will be cured after July 1st of this year. When we file paper briefs, it's always been the court's position if there are documents that are at issue to the appeal, that they should be contained in the appendix. And here, the complaint is critical to this appeal. It is not contained as a piece of paper in your appendix. The appendix is still there. It is. Yes. I had trouble at the beginning. Yes. I apologize. But we don't have the motion, I guess. And that would have been helpful. Understood. Just in terms of addressing some of the things that occurred in the circuit court. First, if you look at the report proceedings, Judge Polkjoy, in essence, said, well, you might argue that you want another bite at the apple and replete it. But he said, since I've already given you that second opportunity to replete, there won't be another opportunity in this case. I think it's important to go off what counsel just finished up, his argument, in the terms of just because we have it doesn't mean we have to use it. And two things with that. One, that just screams we're not going to undertake the responsibility to use this device. But that goes a step further than what one of our arguments is, and that's in the sense of making the device available. If you have it, you see around various places where there's a box that says AED. You go on trains, it says AED devices is here. People may or may not know where those devices are. And so that's an important thing to take into consideration before you can get to the use of the device. Also, in terms of any set of facts, counsel went into some various issues in terms of how are we supposed to know that he was playing paddle tennis? How are we supposed to know that he was suffering from cardiac arrest? The fact pleading standard in Illinois is liberally construed. We've pled ultimate facts that he was playing paddle tennis, that he suffered from cardiac arrest. And if those facts are pled, that would entitle plaintiff to relief. In essence, counsel's argument is attempting to heighten our pleading standard. Well, there's one thing that he insists was not pled, and that is, did anybody from the country club know that this had happened? And that falls within our allegation that the defendant country club knew or should have known that he was suffering from cardiac arrest. When somebody comes and is calling 911 or seeking out help and an ambulance arrives, throughout the course of discovery, we would be able to find out what the chain of events was prior to or that led the country club to know that the decedent was suffering from cardiac arrest. That's things that we can find out in discovery. But that then really goes to the use of the device. One of the other things, like I've said before, is we still don't have the device available for somebody to use. There was nobody that was playing paddle tennis with the decedent that had the ability to go and get the AED device. It's pled in our complaint. Failed to make a device accessible, failed to make a device available. That's pled. And it proved we might end up with maybe a proximate cause issue as far as summary judgment is concerned, but from a pleading standpoint, we have pled what is necessary for there to be not only a common law duty, as argued, which defense counsel kind of glazed over, seemingly because the foreseeability and likelihood and the magnitude and the burden, as argued, it's satisfied with what's pled. But then getting into the 314A argument, the court in Salte said, well, the YMCA extended memberships for a fee. We have pled, it was a private country club, and the decedent was a member. We don't need to toss the common sense of, well, how do you become a member? Well, you have a membership fee that you have paid to the country club. Yes, it says it's a private country club, but I can't just walk into a YMCA like in Salte and start using their equipment. I have to be a member of that facility. The same goes for the country club. You can't just go out and play 18 holes and go to the pro shop and say I have a 915T tie because you can't do that. You have to be a member. And in that regard, that's what makes 314A applicable in this case, and that goes into the reasonableness of their conduct to render aid. Do we know if there is any advertisement, so to speak, in the rules of membership indicating that they have this AED on premises and can use it in case of emergency, or don't we have that knowledge because we haven't gotten to discovery yet? Well, we don't have that knowledge, and I think, Justice Hutchinson, what you're pointing out is an issue for discovery that would be obviously more appropriate once we get past the pleading stage and to require that additional information. All right, but theoretically, your client was the member and probably had some paperwork that could have been accessed, the agreement, whatever, that could have been accessed as his complaint was filed, correct? Correct, correct. And that would, in essence, afford him the fact that there is an AED device on the premises that was available. But it could have been used for pleading purposes is what I'm saying. Understood. All right, Justice Breyer. That just does it. Thank you, Your Honors. Thank you very much. Thank you, gentlemen, for argument. We will take the matter under advisement and we will recess to prepare for our next argument. Thank you.